THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| HODGE E. NUNNELLY, III, | ) |
| | ) Case No. 2:06CV00832 DS |
| Plaintiff, | ) |
| vs. | ) |
| JO ANNE B. BARNHART, Commissioner of the Social Security Admin., | ) MEMORANDUM DECISION |
| | ) |
| | ) |
| Defendant. | ) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pursuant to 42 U.S.C. § 405(g), plaintiff Hodge E. Nunnelly, III brings this action which provides for judicial review of the final decision of the defendant, Jo Anne B. Barnhardt, Commissioner of Social Security Administration. The Social Security Administration found that plaintiff was no longer disabled as of March 2004 and therefore denied his application for continued Disability Insurance Benefits ("DIB"). [R. 409-11] This finding was upheld on reconsideration. [R. 412-25] Plaintiff requested a hearing before an ALJ which was held in May of 2005. At the hearing, the ALJ had a Vocational Expert testify as to the jobs that plaintiff could perform. [R. 491-526] The ALJ issued a decision on August 17, 2005, finding plaintiff was no longer disabled as of March 2004 and although the claimant's additional non-exertional limitations do not allow him to perform the full range of light work, he could still perform other jobs that exist in significant numbers in the national economy. [R. 19-29] When the Appeals Council denied plaintiff's request for review, the ALJ's decision became the Commissioner's "final decision" under 42 U.S.C. § 405(g). [R. 10-15] Plaintiff now brings the instant action seeking judicial review of the Commissioner's decision.

The court has received and reviewed briefing from all parties and is prepared to issue the following decision without the assistance of oral argument.

## REVIEW OF FACTUAL FINDINGS

Plaintiff was injured in an industrial accident in 1988 while welding railroad cars at Geneva Steel. [R. 462] While working on a railroad car, plaintiff experienced a sudden onset of low back pain. [Id.] From 1990 to 1993, plaintiff underwent a series of surgeries on his lower back to correct the injury. [Id.] The claimant filed for DIB on December 7, 1992 and was allowed benefits on November 23, 1993. [R. 19] The Administrative Law Judge ("ALJ") recommended that the plaintiff be re-evaluated one year from the date of the decision because of the likelihood of medical improvement. [R. 387, 389] A continuing disability review, however, was not initiated until September of 2003 [R. 452-61], at which time plaintiff indicated he had not seen a physician or been treated by a medical clinic in the last ten years. [R. 453-54]

In March 2004, the State agency requested a consultative examination with a Dr. Greenwood. [R. 462-66] During the examination, the plaintiff had stated to Dr. Greenwood that he had done "reasonably well" since his last surgery in September 1993. [R. 462] He stated his back pain was increased by lifting, bending, or stooping, and that vacuuming "kill[ed] him." [Id.] He could walk reasonably well but rarely went up stairs. [Id.] He could drive 100 miles, but would have to get out and walk for 5-15 minutes. [Id.] After the examination, Dr. Greenwood diagnosed chronic low back pain, chronic obstructive pulmonary disease aggravated by cigarette smoking, and adhesive capsulitis of the left shoulder. [R. 464]

On March 10, 2004, R. Burkett, M.D., a non-examining State agency physician, found that plaintiff experienced medical improvement and that he could perform light work based on the findings of Dr. Greenwood. [R. 480-81]

On April 20, 2004, plaintiff returned for a follow-up to Dr. Muir the surgeon who had performed the final surgery in 1993. [R. 467-68] Plaintiff stated to Dr. Muir that he was doing "adequately well," and had significant back pain if he stood for more than an hour. [R. 467] Plaintiff rated his pain as a five on a scale of zero to ten and an eight with activities. [R. 469] Dr. Muir stated that in his opinion, plaintiff would have "difficulty holding down a job due to his back condition." [R. 467]

On June 18, 2004, Dennis Taggart, a non-examining State agency physician, affirmed the previous determination that plaintiff had experienced medical improvement and could perform light work. [R. 470-79]

On April 22, 2005, plaintiff underwent a functional capacity evaluation by Steve Crandall, a physical therapist, on referral from Dr. Muir. [R. 486-88]. Mr. Crandall concluded as follows:

> [Plaintiff] tolerated the 1.75-hour evaluation well with moderate fatigue and a mild increase in pain after the testing. [Plaintiff] tested between the sedentary and the light medium category on the U.S. Department of Labor's category of physical demands. He performed well with the lift test but lacks obvious endurance to be able to lift repeatedly. [Plaintiff's] greatest limitation that would limit employment is his short (20 minutes) standing tolerance. His walking tolerance would also restrict employment with any significant walking requirement. The lumbar fusion that was performed in 1993 becomes a risk factor due to the increased wear and tear on the level above the fusion. [Plaintiff] demonstrated consistency in his testing and I believe the information in this evaluation is both reliable and reproducible.

[R. 488]

On May 5, 2005, Dr. Muir completed an assessment of plaintiff's functioning. [R. 482-85] He indicated that plaintiff needed to lie down every four hours and could perform sedentary work.

[R. 482-83] He indicated plaintiff could sit for 20 minute increments for a total of four hours in an eight-hour workday. [R. 482-83] He found that plaintiff would miss more than four days of work per month due to his impairments and that he could perform only four to five hours of work in a typical workday. [R. 485]

### STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether substantial evidence in the record supports the factual findings and whether the correct legal standards were applied. Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citations and internal quotation marks omitted). This Court "may neither reweigh the evidence nor substitute [its] discretion for that of the [ALJ]." White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2002). Where evidence as a whole can support either the ALJ's decision or an award of benefits, the ALJ's decision must be affirmed. Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990).

Social Security regulations provide the specific steps for an ALJ to follow in reviewing the question of whether disability continues. 20 C.F.R. § 404.1594(f) and § 416. 994(b)(5). If the ALJ determines there has been medical improvement, he must re-evaluate the claim according to the eight step sequential process as outlined in the Code of Federal Regulations in order to determine whether the claimant has regained the ability to engage in substantial gainful activity. Id.

Only on the final step of the evaluation does the burden of showing that the claimant's ability to perform other competitive work that is available in significant number in the regional or national economies fall on the Commissioner. 20 C.F.R. §§ 404.1520(e) & (f) and 416.920(e) & (f). If the Commissioner fails to make this showing, an award of disability benefits is warranted. Id. The

review may end and benefits may continue at any point in the review if it is determined that the individual is still unable to engage in substantial gainful activity.

ANALYSIS

Plaintiff requests that the Commissioner's decision be reversed based on four arguments: The ALJ at Step 2 inadequately found that the plaintiff's disability did not meet the requirements in the list of impairments to qualify for benefits; The ALJ's ruling at Step 8 which called for the ALJ to identify jobs in the national economy that plaintiff could still perform under the circumstances was improperly decided because 1) the ALJ's ruling was not based on an accurate hypothetical used in the Vocational Expert ("VE") testimony and 2) the ALJ committed reversible error by not asking whether the VE testimony was consistent with the Dictionary of Occupational Titles ("DOT"); The ALJ erred in rejecting the opinions of plaintiff's treating physician and other medical professionals; And finally, the ALJ did not provide adequate reasons for disregarding the credibility of the plaintiff's complaints about his ailment.

I.   ALJ Decision at Step 2

Plaintiff contends that the ALJ erred at Step 2 because the plaintiff's ailment was severe enough to meet the requirements under Listing 1.04. For a finding of disability at Step 2 of the evaluation, evidence of a disorder of the spine is required and is defined in Listing 1.04 as:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test;

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours, or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app.1

The "inability to ambulate effectively" is defined generally as "having insufficient lower extremity functioning (see1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Furthermore, "examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches, or two canes. . . ." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b.

The court finds there was substantial evidence in the record to support the ALJ's finding that plaintiff did not meet the criteria under Listing 1.04 (Tr. 22 Tr. 27, Finding 2). The record shows that plaintiff did not demonstrate motor loss, spinal arachnoiditis, or an inability to ambulate effectively. In March 2002, plaintiff told Dr. Greenwood that he could walk "reasonably well" (Tr. 462). In addition, at that time, he had a negative straight leg rasing test and he could walk on his toes and heels and on either leg without difficulty (Tr. 463-64). And, in April 2005, plaintiff told Mr. Crandall that he could walk for 30 minutes (Tr. 486); and in May 2005, he testified that he could walk for 20 minutes before he needed a break (Tr. 506-07). Therefore, plaintiff did not meet Listing 1.04.

Additionally, Drs. Burkett and Taggart, non-examining State agency physicians indicated plaintiff's impairments did not meet or equal the Listings based on their review of the evidence that plaintiff could perform light work (Tr. 470-81). See, e.g., Perales, 402 U.S. at 408; 20 C.F.R. § 404.1527(f); SSR 96-6p, at*2. Further, SSR 96-6p states that the signature of a State agency medical consultant on a Disability Determination and Transmittal Form "ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence." Here, Dr. Burkett signed the requisite forms, evidencing his consideration of whether plaintiff's combination of impairments were equivalent to the Listings (Tr. 403). Hence, according to medical evidence, the ALJ was correct in finding that plaintiff did not meet the criteria for disability under Listing 1.04.

II.     ALJ Decision at Step 8

The ALJ's ruling at Step 8 of the sequential evaluation is likewise upheld by this court. The plaintiff claims that 1) the ALJ's ruling was not based on an accurate hypothetical used in the VE testimony and 2) the ALJ committed reversible error by not asking whether the VE testimony was consistent with the DOT. However, the court finds the ALJ, based its decision on substantial evidence and applied correct legal standards that support the ruling.

At the final step of the evaluation, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite the identified limitations. Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir. 1998). "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991), quoting Ekeland v. Bowen, 899 F.2d 719, 724 (8th Cir. 1990).

7

However, "the ALJ [is] not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record." <u>Bean v. Chater</u>, 77 F.3d 1210, 1213 (10th Cir. 1995).

The ALJ relied upon the testimony of Drs. Greenwood, Burkett, and Taggert and also the physical therapist, Mr. Crandall, in making the determination as to the identified limitations of the claimant when identifying specific jobs available in the national economy.  As such, the ALJ is not required to apply the limitations claimed by the plaintiff to the hypothetical stated by the VE.

In <u>Hargis</u>, "the administrative law judge did not present to the vocational expert any difficulties manifested by the claimant's . . . impairment." 945 F.2d 1482, 1491.  This case is distinguishable from <u>Hargis</u> in that the ALJ did present to the vocational expert with precision the difficulties manifested by the claimant's impairment.  Since it is at the ALJ's discretion to accept the answer to a hypothetical question according to the limitations accepted by the ALJ, it is not the decision of this court to decide which hypothetical applies if the ALJ addressed all of the claimant's impairments with precision in the hypothetical.  This court "may neither reweigh the evidence nor substitute [its] discretion for that of the [ALJ]." <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2002).  Hence, the court rejects the argument of the plaintiff that the ALJ did not meet its burden at Step 8 of the sequential evaluation.

The DOT provides that when an apparent unresolved conflict between VE evidence and the DOT exists, the adjudicator must elicit a reasonable explanation for the conflict before relying upon the VE evidence to support a decision about whether a claimant is disabled.  SSR 00-4p, 2000 WL 1898704 (S.S.A. 2000).  Although the ALJ does have the affirmative responsibility to ask about any possible conflict between the expert's testimony and the DOT, the plaintiff fails to state if there is

8

any conflict. Accordingly, the court finds the ALJ's failure to ask was harmless error and finds further that plaintiff failed to present argument or evidence of some conflict that has " a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." Fisher-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).

III.     ALJ Rejection of Treating Physician Opinion and Other Medical Professionals

The court finds the ALJ's reliance on the findings of Dr. Greenwood and Mr. Crandall were based on substantial evidence and the use of and reliance on such evaluations were the prerogative of the ALJ in determining the disability status of the claimant. The plaintiff argues that the ALJ erroneously rejected the opinion of the treating physician, Dr. Muir, and parts of the evaluation of Mr. Crandall because (1) finding that Dr. Muir's opinion was based on subjective complaints was fallacious, (2) Dr. Greenwood, the State's examining physician, did not offer any opinion as to the claimant's functional limits from his examination, and (3) the ALJ's findings were contrary to Mr. Crandall's reports. This court affirms the holding of the ALJ because the ALJ's findings were based on substantial evidence and correct application of law.

The opinion of the treating physician is entitled to great weight and the Commissioner must provide "specific, legitimate reasons" for rejecting a physician's opinion. Miller v. Chater, 99 F.3d 972 (10th Cir. 1996). Those reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p. However, when a conflict exists between the treating physician's examinations and the detailed examination of the consultative physicians, which included more specific range of motion tests and more detailed examination than the treating physician, there is a legitimate factor for rejecting the treating physician's opinion. White v.

Barnhart, 287 F.3d 903, 907-908 (10th Cir. 2002).  The ALJ may consider other medical opinion evidence in rejecting the treating physician's opinion.  Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

The ALJ stated, "In comparing all of the doctor's findings, the undersigned came to the conclusion that [Plaintiff] was capable of performing light exertional work.  The basis for this decision came mainly from Dr. Greenwood's findings and the physical therapist's findings.  Both the doctor's and the therapist's findings were more in depth and reflected a thorough evaluation of [plaintiff's] present medical status, while Dr. Muir's assessment was based more on [plaintiff's] subjective complaints verses a thorough evaluation of [plaintiff's] true physical capacity." [Tr. 25.]

The Commissioner notes that the ALJ gave Dr. Muir's opinion less weight because they were inconsistent with other substantial evidence of record, namely the findings of Dr. Greenwood and Mr. Crandall.  The findings of Dr. Greenwood were based on an evaluation notably more in depth than Dr. Muir.  Furthermore, the opinions of Drs. Burkett and Taggart, which affirmed the findings of Dr. Greenwood further bolster the holding of the ALJ even though Dr. Greenwood did not offer any opinion as to the claimant's functional limits.

The ALJ is responsible for assessing the residual functional capacity of the plaintiff.  20 C.F.R. § 404.1546c.  Although Mr. Crandall is not an "acceptable medical source" for determining disability, his opinion should still be considered .  20 C.F.R. § 404.1513(a); SSR 06-03p, 2006 WL 2329939 (S.S.A. 2006).  The opinion of Mr. Crandall was considered in the ALJ's decision.  Mr. Crandall mentioned that the plaintiff could still do light work which the ALJ relied upon in making his determination.  The "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8 hour workday."  SSR 83-10, 1983 WL 31251, (S.S.A. 1983).

Although the ALJ did not decide exactly in accordance with the physical therapist, his actions were not contrary to Mr. Crandall's determination in finding that plaintiff could still do light work and there was substantial evidence from the reports of Drs. Greenwood, Taggart, and Burkett, and Mr. Crandall that he could do so. As such, it is the responsibility of the ALJ for assessing residual functional capacity and not that of the physical therapist. Hence, this court affirms the ALJ's decision and rules that the ALJ did not improperly reject the opinion of the treating physician and other medical professionals.

IV.     Credibility Findings

The ALJ had substantial evidence for a negative credibility finding because plaintiff was not taking severe pain medication or attending frequent doctor visits during the ten years after his final back surgery. The plaintiff argues that the ALJ did not present adequate reasons for a finding of negative credibility because (1) the fact that most people would continue to take chronic pain medication does not in any way undermine the claimants credibility and (2) frequent doctor visits were not prescribed. This court affirms the ALJ's decision finding a failure to take medications and to have regular visits with a physician constitutes evidence that is sufficiently substantial to undermine credibility.

The determination or decision to discontinue disability benefits must contain specific reasons for the finding on credibility. Social Security Ruling 96-7p. While credibility determinations are peculiarly the province of the finder of fact or the ALJ, such findings "should be closely and affirmatively linked to substantial evidence . . . ." Houston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). However, "credibility is the province of the ALJ." Hamilton, 961 F.2d at 1499. While an ALJ must state specific reasons for his credibility finding, Kepler v. Chater, 68 F.3d 387, 391

(10th Cir. 1995), "a formalistic factor-by-factor recitation of the evidence" is not required. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). So long as the ALJ sets forth the specific evidence he relies on in evaluating claimant's credibility, his credibility evaluation must be upheld. Id.

The ALJ stated that narcotics are used in cases of severe pain where anti-inflammatory medications are used widely for arthritic pain and that the plaintiff did not fall among those with severe pain. [Tr. 25] In 2004, plaintiff told Dr. Greenwood that he only occasionally took Arthrotec (a nonsteroidal anti-inflammatory drug similar to ibuprofen) and Excedrin which is used for mild or moderate pain. [Tr. 462] In September of 2004, plaintiff reported that he took Bextra (a nonsteroidal anti-inflammatory drug) yet took ibuprofin and Exedrin instead because he could not afford Bextra. [Tr. 440] The type and dosage of medication is a relevant factor in assessing plaintiff's symptoms. Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987). Hence, the ALJ correctly considered the type and dosage of the drugs plaintiff was taking as substantial evidence of his condition and as a reason for a negative credibility finding.

Furthermore, the ALJ's negative credibility finding was also based on the fact that plaintiff had not seen a physician in ten years. The ALJ found that most individuals experiencing problems with pain find that their ability to function is significantly compromised to the point where they have no choice but to continue medical intervention. [Tr. 26] This rationale is the province of the ALJ and is well supported by law. Treatment other than medication is a relevant factor in assessing symptoms. 20 C.F.R. § 404.1529(c)(3)(v). Also, the ALJ's credibility determination may be supported by claimant's failure to seek medical treatment. Shepherd v. Apfel, 184 F.3d 1196, 1202 (10th Cir. 1999). Furthermore, an ALJ may consider the nature and frequency of treatment sought

when assessing the intensity of a claimants's pain symptoms.  <u>Luna</u>, 834 F.2d at 165-66.  Hence, the court finds ALJ's negative credibility finding was supported by substantial evidence.

## CONCLUSION

The Commissioner's decision is supported by substantial evidence in the record and is not the result of any legal error which has been brought to the court's attention.  The paintiff's complaint is  DISMISSED and the Commissioner's decision to deny plaintiff benefits is AFFIRMED.

SO ORDERED.


DATED this 23rd day of August ,2007.

BY THE COURT:

*David Sam*

DAVID SAM<br>
SENIOR JUDGE<br>
UNITED STATES DISTRICT COURT